IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SINOPEC USA, INC. § § *Plaintiff*, § § v. § § PDVSA SERVICES, BV; PETROLEOS DE § VENEZUELA S.A.; and PDVSA INDUSTRIAL § § *Defendants.* § | NO. 4:17-cv-3604 JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff Sinopec USA, Inc. ("Sinopec") sold 45,000 tons of steel rebar and was never paid. As a result, Plaintiff, Sinopec USA, Inc. ("Sinopec") files this Complaint against Petroleos De Venezuela, S.A. ("PDVSA"), PDVSA Services, BV ("Services"), and PDVSA Industrial ("Industrial")(collectively, "Defendants").

## PARTIES

1. Plaintiff Sinopec is a New York corporation with its principal place of business in Harris County, Texas at 3050 Post Oak Blvd., Suite 1200, Houston, Texas 77056.

2. Defendant PDVSA is a Venezuelan state-owned entity with its registered office at Avenida Libertador, Edificio Petróleos de Venezuela, Torre Este, La Campiña, Caracas 1050-A in the Bolivarian Republic of Venezuela. Defendant Petroleos de Venezuela S.A. may be served at its registered office, pursuant to the "Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters," commonly known as the Hague Service Convention, of which Venezuela is a signatory.

3. Defendant Services is a Dutch entity its registered office in Leidschendam and its place of business at President Kennedylaan 19, 2517 JK The Hague, Netherlands. Defendant PDVSA Services, BV may be served at its registered office, pursuant to the Hague Service Convention, of which the Netherlands is a signatory.

4. Defendant Industrial is a Venezuelan entity with its registered offices at Av. Francisco Solano, Centro Empresarial, Sabana Grande, P-16 Sabana Grande, Apartrado 169 Caracus 1050-A in the Bolivarian Republic of Venezuela. PDVSA Industrial may be served at its registered office, pursuant to the Hague Service Convention, of which Venezuela is a signatory.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over each of the Defendants as each regularly does significant and/or substantial business in Texas, and/or entered into a contract in Texas to be performed in Texas, which they have breached, either individually or in concert with each other, as alleged herein.

6. The amount in controversy exceeds $75,000.  Sinopec is a citizen of New York and Texas for diversity purposes.   Defendants are all subjects of foreign states.  Accordingly, this Court has subject matter jurisdiction. *See* 28 U.S.C. §1332(a)(2).

7. Venue is proper as a substantial part of the events or omissions giving rise to the claim occurred in Harris County. 28 U.S.C. §1391(b)(2). Alternatively, venue is proper in the Southern District of Texas, Houston Division because Defendants are subject to this Court's personal jurisdiction with respect to this action.  28 U.S.C. § 1391(b)(3).[1]

---

[1] A Request for Arbitration was submitted to the International Court of Arbitration of the International Chamber of Commerce on November 21, 2017 with Sinopec as Claimant, and Bariven S.A., PDVSA, Industrial, and Services as Respondents. Out of an abundance of caution with respect to the applicable statute(s) of limitations, Sinopec has filed the present lawsuit and anticipates filing a motion to stay this litigation pending the outcome of the arbitration. As the Fifth Circuit observed in an analogous situation, a plaintiff may (and should) file suit within the statute of limitations and then seek a stay of the action pending arbitration: "Such a course would have guaranteed that the

# FACTS

8.  Sinopec entered into a May 15, 2012 purchase order (hereinafter, the "PO") with Bariven, S.A. ("Bariven") under which Sinopec agreed to sell 45,000 tons of steel rebar (the "Steel Rebar") in exchange for payment of $43,470,000. Sinopec delivered the Steel Rebar, but the full amount due and owing under the PO was never paid. Sinopec has suffered tens of millions of dollars in damages as a result.

9.  This is not simply a case of a broken promise to pay. Rather, this case involves a complex commercial transaction specifically calculated to leave Sinopec without a remedy. While Bariven is the named party in the PO, several other related entities were involved in the transaction and, by their conduct, assumed the obligations thereunder (as described in more detail below). Services purportedly acted as Bariven's agent in negotiating the PO, and Industrial was to be the end user of the Steel Rebar. PDVSA admittedly "plans, coordinates, supervises, and controls activities carried out by" Services, Bariven, and Industrial.[2]

### A. PDVSA failed to timely make the advance payment due under the PO.

10. The PO required an initial down payment in the amount of $21,735,000, or 50% of the purchase price, within 15 days "after P.O. Placement against STBY Letter of credit." Even though it is the named party in the PO, Bariven never made the advance payment. Instead, PDVSA made the advance payment, but it failed to do so timely.

11. On its own, PDVSA's failure to timely make the advance payment caused Sinopec to suffer damages. In accordance with the PO, Sinopec issued a "STBY Letter of credit" on June 18, 2012 (hereinafter, the "Original STBY LC"). The Original STBY LC was set to expire on July 16, 2012, and PDVSA failed to make the advance payment by that date. As a

---

lawsuit was brought within the limitations period without waiving any right to arbitration which may have existed." *Fonseca v. USG Ins. Servs.,* 467 Fed.Appx. 260, 261 (5th Cir.2012).

[2] http://www.pdvsa.com/index.php?option=com_content&view=article&id=6541&Itemid=888&lang=en.

result, Sinopec had to modify the Original STBY LC twice (on June 25, 2012 and August 13, 2012), causing Sinopec to incur costs in the amount of $23,052.75 (exclusive of interest).

12. After the Original STBY LC expired, Sinopec issued a second "STBY Letter of credit" on February 7, 2013 (hereinafter: the "Second STBY LC"). The Second STBY LC was valid until April 10, 2013. In connection with the Second STBY LC, Sinopec had to incur costs in the amount of $39,637.60 (exclusive of interest). PDVSA failed to make the advance payment by the expiration date of the Second STBY LC.

13. Still waiting for PDVSA to make the advance payment, Sinopec issued a new "STBY Letter of credit" on August 1, 2013 (hereinafter: the "Final STBY LC"). The Final STBY LC was valid until October 30, 2013. In connection with the Final STBY LC, Sinopec incurred costs in the amount of $32,602.50 (exclusive of interest).

14. On September 11, 2013, PDVSA, rather than Bariven, finally made the advance payment in the amount of $21,735,000. Due to the delay, Sinopec suffered $95,292.85 in damages in association with the Original STBY LC, the Second STBY LC, and the Final STBY LC.

    **B. The ICC entered an award against Sinopec because of the delayed advance payment.**

15. Because of the delayed advance payment, Sinopec was compelled to arbitrate before the International Court of Arbitration of the International Chamber of Commerce (hereinafter, the "Arbitration") by the supplier of the Steel Rebar (hereinafter: the "Supplier"), as a result of which Sinopec ultimately suffered losses in the amount of $2,068,000.

16. To obtain the Steel Rebar required by the PO, Sinopec entered an agreement with the Supplier. The delay in the advanced payment prevented Sinopec from satisfying its agreement with the Supplier and, ultimately, the Supplier sold the steel rebar to a third party,

terminated its agreement with Sinopec, and initiated the Arbitration against Sinopec. On February 17, 2015, the arbitral tribunal rendered its award and held Sinopec liable in the amount of $1,035,000 plus 5% interest as of February 21, 2013 until the day of payment. To comply with the award, Sinopec paid an amount of $1,142,000 to the Supplier. Additionally, Sinopec incurred $926,000 in costs in connection with the Arbitration (for legal assistance and the fee for the arbitral tribunal). All of the costs incurred in connection with the Arbitration were directly caused by the failure of Defendants to timely pay the advance payment as required by the PO.

### C. Sinopec delivered the Steel Rebar in accordance with the PO, and Defendants failed to pay for it.

17. On or around 29 October 2013, Sinopec shipped 25,860.692 tons of the Steel Rebar in accordance with the PO (hereinafter: the "First Shipment"). On or around 13 December 2013, Sinopec shipped an additional 18,913.854 tons of the Steel Rebar in accordance with the PO (hereinafter: the "Second Shipment"). All of the Steel Rebar shipped by Sinopec under the PO satisfied the requirements in the PO and was accepted by Defendants.

18. On January 14, 2014, Sinopec issued an invoice (hereinafter: the "Commercial Invoice") for the delivered Steel Rebar. The Commercial Invoice shows the total tonnage of Steel Rebar shipped by Sinopec, for a total amount due of $43,252,472.27.[3] After applying the advance payment, the remaining amount owed to Sinopec by Defendants was $21,517,472.27. This invoice remains unpaid to this day.

### D. Each Defendant is bound by the PO.

19. From the inception of the PO to the present, Defendants' behavior indicates that each Defendant is bound by the PO and should be liable for their failure to pay.

---

[3] The total tonnage of steel reinforcing bars shipped by Sinopec amounts to 44,774.82 tons. Although this total is lower than the 45,000 tons referred to in the applicable PO, the difference falls within the permissible margin. In view of that difference, the total amount is USD 43,252,472.27.

20. Industrial consistently acted as a party to the PO and, in fact, directed modifications to the PO. For instance, on July 31, 2013, after a number of meetings between Industrial and Sinopec, Valmore Gonzalez, Director of Industrial, sent Sinopec an email, requesting modification of the description and the quantity of the Steel Rebar in the PO. On August 1, 2013, Sinopec confirmed it would make Industrial's requested changes.

21. Furthermore, Industrial is the end user of the Steel Rebar and requested that the Commercial Invoice be sent to Industrial (rather than to Services or Bariven). Industrial has also made explicit promises that it would pay the Commercial Invoice. On January 21, 2015, Sinopec met in person with Industrial concerning the payment of the Commercial Invoice. During that meeting, a representative of Industrial promised to pay the Commercial Invoice. As a result of Industrial's promises, it was Sinopec's reasonable understanding that Industrial was bound by the PO.

22. In addition, Services also led Sinopec to believe that Services was bound by the PO. While the applicable PO and the Terms and Conditions refer to Services as "Purchasing agent" and "Agent" of Bariven, the "Buyer," no distinction between Services and Bariven is made in the emails from Services relating to the PO. Emails from Christian Maldonado, who claims to be a representative of Services, were sent from the address "C.Maldonado@bariven.eu." In the email's contact details, Mr. Maldonado represents himself to be acting on behalf of both Bariven and Services.

23. The Terms and Conditions also indicate how all Defendants acted in concert regarding the PO. They are titled as if they refer to Services (the "PSBV Terms and Conditions for Goods Purchases Revision 08-2009", in which "PSBV" stands for Services), but they refer to Bariven as "Buyer" and carry the logos of both Services and Bariven (the PO only has the logo

6

of PDVSA, but in its body refers to both Services and Bariven, thus also allocating an active role to Services in the performance of the PO).  Furthermore, while Bariven is presented in the Terms and Conditions as the leader of the "Buyer Group," which also includes Services, its website (www.bariven.eu) merely redirects automatically to the PDVSA website (http://www.pdvsa.com/index.php?lang=es).

24. Since the inception of the PO, PDVSA has behaved as if it is bound.  PDVSA (and not Bariven or Services) made the advance payment.  In effect, PDVSA assumed Bariven's role as to the PO and demonstrated its intensive control over Bariven's policy and management. That PDVSA made the advance payment also demonstrates that Bariven was not sufficiently capitalized to fulfill its obligations under the PO.

25. Since making the advance payment, PDVSA has made several promises that it would pay the Commercial Invoice.  For instance, in February 2015 Sinopec sent an email message to PDVSA regarding payment of the Commercial Invoice. Instead of disputing that it could be held liable for payment of that invoice, PDVSA confirmed the claim was due: "the debt situation (…) has been reported to the highest authorities and now we are waiting for the instructions to process payments."

26. PDVSA made a similar statement in August of 2015, again indicating that PDVSA is bound to pay the PO and acknowledging the debt as being owed: "In relation to the debt with the company Sinopec, we are still waiting for payment instructions."

27. PDVSA's promises to pay the PO continued into 2016 and 2017:

- During May of 2016, the President of Sinopec discussed payment of the Commercial Invoice with PDVSA's Vice President of Finance. She did not dispute that PDVSA could be held liable in the matter by Sinopec.  To the contrary, she "promised to make the payment" to Sinopec.

7

- During September of 2016, PDVSA informed Sinopec that the Board of Directors of PDVSA agreed to a proposal to pay the Commercial Invoice. PDVSA and Sinopec subsequently exchanged drafts of a settlement of this payment to Sinopec in writing, but in the end PDVSA avoided the completion of that process.

- During October of 2017, Pedro Salazar, PDVSA's in-house counsel, promised Sinopec to pay the Commercial Invoice. While PDVSA's promises of payment have been empty, at every turn, PDVSA's actions indicate that PDVSA is bound by the PO.

28. At each step of this transaction, Defendants caused Sinopec to believe that it was doing business with Defendants as a unit of closely collaborating parties, all of which were directed by PDVSA.[4] Services negotiated the terms of the PO. Industrial accepted delivery of the Steel Rebar and requested the Commercial Invoice for payment. And PDVSA communicated directly with Sinopec about the PO from the beginning, and not only made several promises to pay throughout, but also repeatedly acknowledged the debt it owed to Sinopec in writing. Bariven was an undercapitalized shell with the sole purpose of preventing Sinopec from having a remedy:



---

[4] PDVSA proudly admits that it "plans, coordinates, supervises and controls activities carried out by its subsidiaries both domestically and internationally." (http://www.pdvsa.com/index.php?lang=en).

8

29. As observed in a separate lawsuit in which yet another PDVSA entity failed to pay the amount it owed, PDVSA is a "unique organization" that gives "little consideration to profits and losses of its separate corporate entities, and instead employ[s] the companies as operational arms on behalf of the parent, PDVSA." *Exim Brickell LLC v. PDVSA Services Inc.*, 516 F. Appx. 742, 760 (11th Cir. 2013).

30. Acting as one indistinguishable entity, Defendants worked in concert with one another to convince Sinopec to make the delivery of the Steel Rebar without full payment to Sinopec. By effectively functioning as one party (albeit with different names), Defendants have negotiated, breached, and promised payment for the PO as one unit under the control of PDVSA.

## Count I:
## Breach of Contract

31. Sinopec repeats and realleges each and every allegation contained herein as if fully set forth in this section.

32. The PO was a valid, enforceable contract. In accordance with the PO, Sinopec delivered the complete order of rebar to Industrial, who accepted the delivery without complaint. $21,517,472.27 due under the PO remains due and owing.

33. As shown herein, though Bariven was the signatory to the PO, Defendants were working in concert with each other and with Bariven to improperly withhold payment from Sinopec, and each represented itself to Sinopec as a party to the PO numerous times.

34. As a result of each of Defendants' actions, Sinopec has not only been damaged in the amount of at least $21,517,472.27 (plus interest) as a result of the unpaid Commercial Invoice; $95,292.85 (plus interest) in association with the Original STBY LC, the Second STBY LC, and the Final STBY LC; and $2,068,000 (plus interest) in association with the Arbitration.

35.     Because Defendants worked in concert to breach the PO, each Defendant is therefore jointly and severally liable to Sinopec.

## Count II:
## Common Law Fraud/Fraudulent Inducement

36.     Sinopec repeats and realleges each and every allegation contained herein as if fully set forth in this section.

37.     Each Defendant, either acting in concert or separately, represented to Sinopec that full payment would be made under the PO in exchange for the Steel Rebar.

38.     These representations were false when made, as each Defendant never intended that full payment be issued to Sinopec.

39.     Defendants' conduct constituted intentional misrepresentations, deceit, and concealment of material facts known to them, with the intention to deprive Sinopec of the payment it was owed. Each Defendant made these false representations knowing that Sinopec would rely on these promises and would deliver the Steel Rebar. Sinopec, trusting that full payment would be made, delivered the rebar in a timely manner and in complete conformance with the PO. However, because of the willful deception of each Defendant, Sinopec been damaged in the amount of at least $21,517,472.27 (plus interest) as a result of the unpaid Commercial Invoice; $95,292.85 (plus interest) in association with the Original STBY LC, the Second STBY LC, and the Final STBY LC; and $2,068,000 (plus interest) in association with the Arbitration.

## Count III:
## Unjust Enrichment

40.     Sinopec repeats and realleges each and every allegation contained herein as if fully set forth in this section.

41. Defendants are also liable for unjust enrichment. It is inconceivable that Defendants, a unit of closely collaborating parties within the PDVSA group under the leadership of PDVSA, are allowed to enjoy, without justification, the value of the Steel Rebar, while Sinopec remains unpaid.

42. Ultimately, it would be unconscionable for Defendants to retain the rebar without paying Sinopec the amount owed.[5] Because Defendants directly benefited from Sinopec's contractual performance, yet have done nothing to make Sinopec whole, they must be required to reimburse Sinopec in the amount stipulated under the PO.

### Count IV:
### Alter Ego as to PDVSA

43. Sinopec repeats and realleges each and every allegation contained herein as if fully set forth in this section.

44. Bariven's corporate form should be disregarded because it was used by PDVSA as a sham to perpetrate a fraud against Sinopec.

45. Factors justifying disregarding the corporate form include undercapitalization, failure to adhere to corporate formalities, and use of the corporate form to perpetrate a fraud—each of which are present here. PDVSA so controlled Bariven's affairs that Bariven was a mere instrumentality of PDVSA and its other business operations, and observance of the fiction of separate existence would, under the circumstances, sanction a fraud and promote injustice. PDVSA controlled and operated Bariven under a unity of ownership and unified administrative control and denuded the company assets to deprive creditors such as Sinopec of the compensation it is owed under the PO, resulting in damages suffered by Sinopec.

---

[5] Though Industrial served as the end user for the Steel Rebar, accepting the conforming goods, each of Defendants has been unjustly enriched as each worked in concert with the other to accept the benefit of the PO without issuing the full payment owed Sinopec.

46. Upon information and belief, PDVSA owns substantially all of Bariven's assets, leaving Bariven as a mere shell to assume liability without adequate protection to Sinopec as a creditor. As shown by Bariven's inability to make payment to Sinopec, Bariven was clearly undercapitalized and required PDVSA's financial intervention to complete the advance payment. Considering the totality of the circumstances and the equities of the situation, PDVSA is liable individually, jointly, and severally in this matter for Bariven's clear fraud.

## Count V:
## In the Alternative, Conspiracy

47. Sinopec repeats and realleges each and every allegation contained herein as if fully set forth in this section.

48. To the extent Defendants claim to be separate and distinct entities, Defendants formed a combination of two or more persons. The object of the combination was to accomplish an unlawful purpose and/or to accomplish a lawful purpose by unlawful means.  Defendants had a meeting of the minds on the object of the conspiracy and on their course of action.  The combination planned, assisted, and/or encouraged the fraud which Defendants perpetrated on Sinopec. The object of the combination was for Defendants, as conspirators and members of the combination, to defraud Sinopec and to induce Sinopec to deliver Steel Rebar without receiving full payment. Defendants knew that the misrepresentations they made to Sinopec were designed to cause Sinopec to enter into transactions – the purchase of the Steel Rebar from Habas and to deliver the Steel Rebar – which Sinopec would not have entered into if it had known the true facts.

49. In order to coordinate their actions and to ensure that Sinopec did not become aware of their conspiracy to defraud it, Defendants had to coordinate with one another on multiple occasions to discuss and plan their course of action.  Among other things, Defendants

hid behind a complicated series of subsidiaries and affiliates that was created for the express purpose of defrauding suppliers, and this scheme was carried out to Sinopec's detriment. As shown by the complicated and interrelated nature of these various entities, combined with the disingenuous nature of the feigned promises to make full payment, these entities were acting in concert to defraud Sinopec. As a result of this conspiracy, Sinopec was harmed as described above.

50. Defendants, as members of the combination and conspirators, had a meeting of the minds on the object of their conspiracy and their course of action, which included defrauding Sinopec. Sinopec suffered damage as a proximate result of the Defendants' wrongful acts.

## Count VI:
## In the Alternative, Aiding and Abetting

51. Sinopec repeats and realleges each and every allegation contained herein as if fully set forth in this section.

52. In the alternative, if Defendants claim to be separate and distinct entities, each aided and abetted Bariven in committing fraud against Sinopec. They did so by assisting or encouraging Bariven in the commission of the fraud. Each Defendant had knowledge that Bariven's conduct was fraudulent, had the intent to assist Bariven in the conduct, and gave Bariven assistance or encouragement, which was a substantial factor in causing the tort of fraud and the breach of contract.

53. Specifically, each Defendant defrauded Sinopec by making promises to effectuate payment on the PO on behalf of Bariven, with no intent of performance. Each Defendant made these false promised for the purpose of assisting and encouraging Bariven in the commission of fraud against Sinopec.

54. Because each Defendant assisted Bariven in committing the tort of fraud against Sinopec, they are liable as principals for the damages and injuries inflicted on Sinopec.

55. Furthermore, each Defendant planned, arranged, and agreed on a course of action to further the fraud, making all involved liable for the actions of one another. As each Defendant pursued a common plan or design to commit a tortious act and actively participated in it, each is therefore equally liable for Sinopec's damages.

### Count VII: Agency and Ratification

56. Sinopec repeats and realleges each and every allegation contained herein as if fully set forth in this section.

57. Whenever in this complaint it is alleged that any Defendant or Bariven did, or failed to do, any act, thing and/or omission, it is meant that Defendant and/or Bariven itself or its agents, officers, servants, employees, vice principals, or representatives either did or failed to do such act, thing and/or omission, and it was done with the full authorization or ratification of PDVSA and/or with actual and/or apparent authority of PDVSA and/or subject to PDVSA's control.

### Damages

58. Sinopec's total claim – apart from interest and costs – amounts to at least $23,680,765.12 plus interest, arbitration costs, and attorney's fees. Sinopec's claim includes $21,517,472.27 for the unpaid amount due under the Commercial Invoice; $2,068,000 for the costs incurred by Sinopec as a result of the Arbitration;[6] and $95,292.85 for the costs incurred by

---

[6] Though Sinopec anticipates Industrial will argue it had no role in causing the damages resulting from the Arbitration, Industrial is nonetheless responsible for these damages as, during all relevant times, it was working in concert with the remaining Defendants to wrongfully withhold payment from Sinopec.

Sinopec as a result of the modifications to the Original STBY LC, the Second STBY LC and the Final STBY LC.

## Punitive Damages

59. Each of Defendants' conduct described herein was committed with malice and intent to injure, or in the alternative, was committed with conscious indifference to a high degree of risk to Sinopec, a risk which was known to each of the Defendants. Each of Defendants' conduct also constitutes actual fraud, justifying punitive damages.

## Jury Demand

60. Sinopec hereby demands a trial by jury.

## Attorney's Fees

Sinopec has retained counsel for this matter and is entitled to recover its reasonable attorney's fees under Section 38.001 of the Texas Civil Practice & Remedies Code and under such other applicable law as may provide for the recovery of attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Sinopec requests and demands the following relief:

(1) compensatory damages in an amount in excess of the minimum jurisdictional limit of this Court;

(2) punitive damages in an amount to be proven at trial;

(3) all reasonable costs and expenses, including attorney's fees; and

(5) such other and further relief as the Court may deem just and proper.

                Respectfully submitted,

                **LOCKE LORD LLP**

                By: /s/ Gregory F. Burch w/ perm HHT
                GREGORY F. BURCH
                State Bar No. 03355440
                Southern District Number: 9345
                gburch@lockelord.com
                600 Travis Street, Suite 2600
                Houston, Texas 77002-3095
                (713) 226-1200 – *telephone*
                (713) 223-3717 – *facsimile*

                ATTORNEY-IN-CHARGE
                FOR PLAINTIFF SINOPEC USA, INC.

**OF COUNSEL:**

CHRIS DOVE
State Bar No. 24032138
Southern District ID No. 37989
cdove@lockelord.com
KURT LANCE KROLIKOWSKI
State Bar No. 24074548
Southern District Number: 1146373
kkrolikowski@locklord.com
HARRY HOLMES THOMPSON
State Bar No. 24088527
Southern District Number: 22115
hthompson@lockelord.com
**LOCKE LORD LLP**
600 Travis Street, Suite 2800
Houston, Texas 77002-3095
(713) 226-1200 – *telephone*
(713) 223-3717 – *facsimile*